## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **VICTOR J. PERGOLA**<br>1423 Owego Avenue<br>Lakewood, OH 44107<br><br>and<br><br>**MAUREEN E. PERGOLA**<br>1423 Owego Avenue<br>Lakewood, OH 44107<br><br>        Plaintiffs,<br><br>   v.<br><br>**SERVIS ONE, INC. d.b.a. BSI FINANCIAL SERVICES**<br>c/o Incorp Services, Inc.<br>9435 Waterstone Blvd., Suite 140<br>Cincinnati, OH 45249<br><br>      Defendant. | Case No.<br><br><br><br>**COMPLAINT**<br><br><br>**(DEMAND FOR A JURY TRIAL)** |

Plaintiffs Victor J. Pergola and Maureen E. Pergola, by and through counsel, for their Complaint against Defendant Servis One, Inc. d.b.a. BSI Financial Services, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Victor Pergola and Maureen Pergola (collectively, the "Pergolas" or "Plaintiffs") are the owners of real property located at 1423 Owego Avenue, Lakewood, Ohio 44107 (the "Home").

2. At all times relevant, the Pergolas have maintained and currently maintain the Home as their primary, principal residence.

3.      Defendant Servis One, Inc. d.b.a. BSI Financial Services ("Defendant" or "BSI")[1] previously acted as a servicer of a note executed by Plaintiff Victor E. Pergola (the "Note") and a mortgage on the Home executed by the Pergolas that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      BSI was the servicer of the Loan from September 22, 2015 through March 19, 2017.

5.      Effective March 20, 2017, servicing rights to the Loan transferred to Non-Party CitiMortgage, Inc. ("Citi") who currently acts as the servicer of the Loan. Citi additionally previously serviced the Loan from September 7, 2012 through September 21, 2015.

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

7.      This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X.

8.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as the Pergolas maintain the Home as their primary residence within this District.

## INTRODUCTION

9.      Like many individuals, over the past decade the Pergolas have fallen under economic hardship due to the loss of employment and a downturn in business, which was only exacerbated by health care crises within their family. As a result, the Pergolas feared for their

---

[1]   In the State of Ohio, BSI Financial Services is a fictitious name for Servis One, Inc. (See https://www.sos.state.oh.us/sos/, last visited July 10, 2017 at 1:30 p.m.).

ability to make their payments on the Loan and possibility losing the Home to foreclosure. In an effort to save the Home and to continue to make reasonable payments on the Loan, the Pergolas initially sought relief from Citi in the form of a loan modification in beginning in late 2012.

10.     For years, Citi would repeatedly request documents already in Citi's possession, ignore the Pergolas' loss mitigation submissions, and otherwise fail to notify the Pergolas as to what specific information and documents were necessary in order for Citi to obtain a complete loss mitigation application. Ultimately, Citi failed to review any of the Pergolas' loss mitigation applications for their eligibility for loss mitigation options.

11.     On or about September 22, 2015, servicing rights to the Loan transferred to from Citi to BSI. Initially, the Pergolas were hopeful that BSI would avoid Citi's missteps and that they would be able to obtain a loan modification and resume making reasonable payments on the Loan and remain in the Home.

12.     Unfortunately, BSI's actions served as a continuation of Citi's missteps as BSI by failed to properly review the Pergolas' loss mitigation applications in the subsequent months.

13.     Specifically, the Pergolas submitted loss mitigation applications to BSI in June of 2016 and in October of 2016. BSI, however, failed to review either loss mitigation application.

14.     Determined to save the Home, in an attempt to rectify BSI's failure to respond to their loss mitigation applications, the Pergolas submitted two (2) separate notices to BSI informing BSI of their errors under Regulation X in failing to review their loss mitigation applications. Yet, as was the case with Citi, BSI failed to correct its errors pursuant to such notices and ultimately failed to review the Pergolas' loss mitigation applications for their eligibility for available loan modification options prior to transferring servicing of the Loan back to Citi.

15.     To date, the Pergolas still have not received a proper review of any of their loss

mitigation applications and their fears have come to fruition as Citi initiated foreclosure proceedings against the Pergolas captioned or otherwise stylized as *CitiMortgage, Inc. v. Victor J. Pergola*, et al., assigned Case No. CV-17-882743 in the Court of Common Pleas for Cuyahoga County, Ohio, on or about July 7, 2017 (the "Foreclosure"). If BSI had simply done its job, the Foreclosure may never have happened.

16.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

17.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

18.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

19.     BSI is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

20.     The Pergolas have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

21.     The Pergolas are asserting a claim for relief against BSI for breaches of 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 under Regulation X as set forth, *infra*.

## BACKGROUND

22.     On September 4, 2015, Citi sent correspondence to the Pergolas noticing the transfer of servicing rights to the Loan to BSI effective September 22, 2015. A true and accurate

copy of that correspondence is attached as *Plaintiffs' Exhibit 1.*

23. Despite the Pergolas' submission of information and documentation supplementing loss mitigation applications submitted to Citi as late as September 10, 2015, Citi never complete a review of the Pergolas' application to determine the Pergolas' eligibility for available loss mitigation options prior to the transfer of servicing rights to BSI.

24. Without Citi having reviewed the Pergolas' loss mitigation applications for their eligibility for available loss mitigation options, servicing rights to the Loan transferred to BSI effective September 22, 2015. See *Plaintiffs' Exhibit 1*.

25. On October 1, 2015, BSI sent correspondence to the Pergolas confirming the transfer of servicing rights to BSI effective September 22, 2015. A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 2.*

26. Upon receiving servicing rights to the Loan, BSI did not take any action to acknowledge, review, or respond to the Pergolas' loss mitigation application that had been pending with Citi at the time of the September 22, 2015 servicing transfer.

27. On or about January 22, 2016, the Pergolas, by and through counsel, sent correspondence to BSI captioned "Re: Request for Information Pursuant to 12 C.F.R. § 1024.36" via Certified U.S. Mail [Receipt No. 7015 1730 0000 8888 9575] ("RFI #1"). A true and correct copy of RFI #1 is attached as *Plaintiffs' Exhibit 3*.

28. BSI received RFI #1 on or about January 26, 2016 at approximately 3:21 p.m. A copy of the "Product & Tracking Information" from the website for the United States Postal Service (USPS) (www.usps.com) for RFI #1 is attached as *Plaintiffs' Exhibit 4.*

29. On or about January 27, 2016, BSI sent correspondence acknowledging their receipt of RFI #1. A true and accurate copy of such correspondence is attached as *Plaintiffs'*

5

*Exhibit 5*.

30.     On or about March 8, 2016, BSI sent correspondence to the Pergolas in response to RFI #1 ("Response to RFI #1").  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 6*.

31.     BSI, by and through Response to RFI #1, barely provided any of the information and documentation requested by and through RFI #1. See *Plaintiffs' Exhibit 6*.

32.     Accordingly, on March 18, 2016, the Pergolas, by and through counsel, sent correspondence to BSI captioned "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a Request for Information in compliance with 12 C.F.R. § 1024.36" via Certified U.S. Mail [Receipt No. 7009 1680 0002 1056 5457] ("NOE #1").  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 7*.

33.     BSI received NOE #1 on or about March 22, 2016 at approximately 11:23 a.m. A copy of the "Product & Tracking Information" from USPS's website ([www.usps.com](www.usps.com)) for NOE #1 is attached as *Plaintiffs' Exhibit 8*.

34.     On or about March 24, 2016, BSI sent correspondence acknowledging their receipt of NOE #1.  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 9*.

35.     On or about May 3, 2016, BSI sent requesting an additional fifteen (15) business days for which to respond to NOE #1.  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 10*.

36.     On or about May 24, 2016, BSI sent correspondence to the Pergolas in response to NOE #1 ("Response to NOE #1").  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 11*.

37.     As time passed, BSI made clear through their inaction that they had no intentions

of reviewing the Pergolas' loss mitigation application that had been pending with Citi at the time of the servicing transfer. Therefore, on or about June 2, 2016, the Pergolas, by and through counsel, submitted a loss mitigation application to BSI ("BSI Submission #1) via facsimile transmission. A true and accurate copy of the facsimile cover page for the BSI Submission #1, which outlines the submitted documents constituting BSI Submission #1, is attached as *Plaintiffs' Exhibit 12*.

38.     Despite receiving BSI Submission #1 on or about June 2, 2016, BSI did not send any correspondence acknowledging receipt of or otherwise concerning BSI Submission #1 through July 6, 2016. See *Plaintiffs' Exhibit 12*. Accordingly, on July 6, 2016, the Pergolas, by and through counsel, sent BSI correspondence captioned "Re: Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(b)(2)(i)(B)" via Certified U.S. Mail [Receipt No. 7016 0340 0000 9159 5282] ("NOE #2") alleging that BSI committed an error for by failing to acknowledge BSI Submission #1. A true and correct copy of NOE #2 is attached as *Plaintiffs' Exhibit 13*.

39.     BSI received NOE #2 on or about July 12, 2016 at approximately 1:31 p.m. A copy of the "Product & Tracking Information" from USPS's website (www.usps.com) for NOE #2 is attached as *Plaintiffs' Exhibit 14*.

40.     On or about July 19, 2016, BSI sent correspondence acknowledging their receipt of NOE #2.  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 15*.

41.     On or about August 23, 2016, BSI sent correspondence to the Pergolas in response to NOE #2 ("Response to NOE #2").  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 16*.

42.     Response to NOE #2 stated that "BSI has determined that no error has occurred…BSI does not have a record of receiving any loss mitigation application from this

borrower, whether complete or incomplete. Therefore, no written notice was sent to borrower." See *Plaintiffs' Exhibit 16*.

43. As BSI made clear, by and through Response to NOE #2, that they would not correct their error in failing to acknowledge receipt of or otherwise review BSI Submission #1, on or about October 7, 2016, the Pergolas, by and through counsel, submitted a second loss mitigation application to BSI via facsimile transmission ("BSI Submission #2"). A true and accurate copy of the cover page for BSI Submission #2, which outlines the submitted documents constituting BSI Submission #2, is attached as *Plaintiffs' Exhibit 17*.

44. Despite BSI's receipt of BSI Submission #2 on or about October 7, 2016, as was the case with BSI Submission #1, over one (1) month passed with no correspondence or communication otherwise from BSI acknowledging their receipt of or otherwise concerning BSI Submission #2. See *Plaintiffs' Exhibit 17*. In an attempt to amicably and expediently resolve this issue, on or about November 21, 2016, the Pergolas, by and through counsel, sent a correspondence to BSI captioned "Re: Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(b)(2)(i); Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(c)" via Certified U.S. Mail [Receipt No. 7014 2120 0003 07885 2110] (NOE #3) alleging that BSI committed an error in failing to acknowledge their receipt of and otherwise review BSI Submission #2. A true and correct copy of NOE #3 is attached as *Plaintiffs' Exhibit 18*.

45. BSI received NOE #3 on or about November 25, 2016 at approximately 6:50 a.m. A copy of the "Product & Tracking Information" from USPS's website (www.usps.com) for NOE #3 is attached as *Plaintiffs' Exhibit 19*.

46. On or about December 2, 2016, BSI sent correspondence to the Pergolas

8

acknowledging their receipt of NOE #3. A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 20*.

47. On or about January 10, 2017, BSI sent correspondence to the Pergolas requesting an additional fifteen (15) business days for which to respond to NOE #3. A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 21*.

48. Finally, after the submission of two (2) loss mitigation applications and two (2) notices of error, and the passage of roughly seven (7) months, on or about January 11, 2017, BSI sent correspondence to the Pergolas acknowledging BSI's receipt of BSI Submission #2, but inexplicably stating that the Pergolas were required to submit missing, corrective, or supplemental information and documentation on or before February 15, 2016, nearly eleven (11) months prior to the date of the letter. A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 22*.

49. BSI subsequently sent correspondence dated January 11, 2017, but inexplicably postmarked January 26, 2017, more than two (2) weeks later, again acknowledging their receipt of BSI Submission #2, but this time stating that the Pergolas were required to submit missing, corrective, or supplemental information and documentation on or before February 15, 2017. A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 23*.

50. On or about January 31, 2017, BSI sent correspondence to the Pergolas in response to NOE #4 ("Response to NOE #4") by and through which BSI explicitly admits that BSI received BSI Submission #2 on or about October 7, 2016 and did not send any correspondence acknowledging such receipt until January 11, 2017. A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 24*.

51. In accordance with BSI's request for the Pergolas to submit additional, corrective,

or supplemental information and documentation for BSI Submission #2, on or about February 7, 2017, the Pergolas, by and through counsel, submitted such information and documentation via e-mail and facsimile transmission ("BSI Submission #3") well before the February 15, 2017 deadline. A true and accurate copy of the cover page for BSI Submission #3, which outlines the submitted documents constituting BSI Submission #3, is attached as *Plaintiffs' Exhibit 25*.

52.     On or about February 27, 2017, BSI sent correspondence to the Pergolas captioned "NOTICE OF SERVICING TRANSFER" indicating that servicing rights for the Loan would transfer back to Citi from BSI effective March 20, 2017. A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 26.*

53.     Despite the passage of approximately forty-one (41) days between the Pergolas' submission of BSI Submission #3 and the effective date of the transfer of servicing rights back to Citi, BSI took no further actions in regards to the loss mitigation application initiated by the submission of BSI Submission #2 and presumably completed by and through the submission of BSI Submission #3 prior to the effective date of the transfer of servicing rights back to Citi.

54.     Despite subsequently working diligently with Citi in an attempt to be reviewed for available loss mitigation options in the hope of obtaining a loan modification, Citi commenced the Foreclosure on or about July 7, 2017, making one of the Pergolas' biggest fears a reality.

55.     Due to BSI's conduct, the Pergolas have lived with anxiety and stress caused by fear, becoming more concerning by the day, that they would lose the Home to foreclosure without ever receiving a fair review of their d loss mitigation applications.

56.     Throughout this entire ordeal, the Pergolas have simply wanted their loan servicer to conduct a review of their eligibility for loss mitigation options to save the Home from risk of foreclosure and to responsibly resume their mortgage payments and start the long road to

rehabilitating their credit.

57.     BSI's wrongful and willful actions have caused the Pergolas to suffer great emotional distress driven by the fear and uncertainty about whether they will lose their home.

58.     BSI's actions have caused the Pergolas to spend significant time gathering duplicative documents and filling out duplicative forms in completing BSI Submission #1, BSI Submission #2, and BSI Submission #3, to which no response ever came, and to spend money on paper, postage and legal fees to compile and send such submissions to BSI and to subsequently draft and send notices of error to seek BSI's compliance with their obligations under Regulation X to obtain information related to the servicing of the Loan and to be reviewed for eligibility for available loss mitigation options.

59.     Had BSI acted properly, BSI could have set a path towards a review for and an approval of the Pergolas for a loan modification which would have prevented them from the continued fear, suffering, and damage of the extended default period they were forced to endure on their Loan and the eventual commencement of the Foreclosure.

60.     At the time of the filing of this Complaint, BSI has had more than Four Hundred Seventy Five (475) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/)

61.     As a direct and proximate result of BSI's conduct, the Pergolas have remained in an unnecessarily expansive financial and emotional limbo for significantly longer than they would have had BSI acted appropriately. Despite the Pergolas' diligent efforts to reach out to BSI, in a sincere attempt to seek a modification of their loan that would be affordable to them and enable

them to return to the status of a "mortgage paying citizen," BSI failed to acknowledge the Pergolas' loss mitigation applications in a timely manner and subsequently review such applications to determine the Pergolas' eligibility for a loan modification.

62.     In addition, as a direct and proximate result of the delays caused by BSI, the Pergolas have continued to be reported as delinquent on the loan to credit reporting agencies, a condition that would have been cured long ago had BSI met their regulatory obligations to review the Pergolas' submitted loss mitigation applications which should have resulted in a modification of their loan. In addition, the potential for the Pergolas to pursue other legal avenues to resolve their mortgage loan issues, such as a chapter 13 bankruptcy or short sale has been delayed and made more difficult, if not impossible, due to increased arrearages on the Loan, as a direct and proximate result of the conduct of BSI. Further, the severe anxiety and immense uncertainty that the Pergolas' have been caused to live under due to the very real possibility of losing their home to foreclosure has caused each of the substantial emotional distress.

**COUNT ONE: AGAINST BSI**
**VIOLATION OF 12 C.F.R. § 1024.41(b)(2)(i)(B)**

**(Failure to acknowledge BSI Submission #1)**

63.     The Pergolas restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

64.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

65.     12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss

12

mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section."

66. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

67. At no point in time during which BSI held the servicing rights for the Loan was there a foreclosure sale scheduled.

68. BSI did not take any action to acknowledge, review, or respond to the Pergolas' loss mitigation application that had been pending with Citi at the time of the September 22, 2015 servicing transfer.

69. On or about June 2, 2016, the Pergolas, by and through counsel, sent BSI Submission #1 to BSI via facsimile transmission. See *Plaintiffs' Exhibit 12*.

70. BSI received BSI Submission #1 on or about June 2, 2016.

71. BSI Submission #1 constituted a loss mitigation application pursuant to 12 C.F.R. § 1024.41. See *Plaintiffs' Exhibit 12*.

72. Within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of June 2, 2016, that is, on or before June 9, 2016, BSI was required to send the written notice required

by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Pergolas.

73.     BSI failed to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Pergolas on or before June 9, 2016.

74.     BSI's failure to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Pergolas on or before June 9, 2016 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(b)(2)(i)(B).

75.     BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Pergolas' rights.

76.     In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) directly and proximately caused the Pergolas to incur actual damages including but not limited to attorneys' fees and expenses in researching, drafting, and sending NOE #2, in an attempt to have BSI properly acknowledge and review BSI Submission #1. See *Plaintiffs' Exhibit 13*.

77.     As a result of BSI's actions, BSI is liable to the Pergolas for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: AGAINST BSI
## VIOLATION OF 12 C.F.R. § 1024.41(b)(1)

**(Failure to exercise diligence in obtaining documentation necessary to supplement BSI Submission #1 in order to obtain a complete loss mitigation application)**

78.     The Pergolas restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

79.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

80.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable

diligence in obtaining documents and information to complete a loss mitigation application."

81.     12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section."

82.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

83.     At no point in time during which BSI held the servicing rights for the Loan was there a foreclosure sale scheduled.

84.     On or about June 2, 2016, the Pergolas, by and through counsel, submitted BSI Submission #1, a loss mitigation application, to BSI via facsimile transmission. See *Plaintiff's Exhibit 12*.

85.     Despite receiving BSI Submission #1 on or about June 2, 2016, BSI did not send any correspondence acknowledging receipt of or otherwise concerning BSI Submission #1 through July 6, 2016. See *Plaintiffs' Exhibit 12*.

15

86.     Further, even after the Pergolas sent NOE #2 alleging that BSI committed an error in failing to acknowledge or otherwise respond to BSI Submission #1, which included proof of submission of BSI Submission #1 as an enclosure, BSI took no further action to obtain any necessary documentation to obtain a complete loss mitigation application. See *Plaintiffs' Exhibit 13*.

87.     Instead of exercising diligence to supplement BSI Submission #1 and to obtain a complete loss mitigation application from the Pergolas, BSI chose to simply disavow any knowledge of BSI Submission #1 by and through Response to NOE #2 stating "BSI has determined that no error has occurred…BSI does not have a record of receiving any loss mitigation application from this borrower, whether complete or incomplete.  Therefore, no written notice was sent to borrower." See *Plaintiffs' Exhibit 16*.

88.     At no point during the four (4) month time period between June 2, 2016 and October 7, 2016, did BSI make any attempt to obtain documents and information necessary to obtain a complete loss mitigation application subsequent to the Pergolas' submission of BSI Submission #1.

89.     BSI's failure to exercise reasonable diligence to obtain documents and information to complete necessary to obtain a complete loss mitigation application subsequent to the Pergolas' submission of BSI Submission #1 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(b)(1).

90.     BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Pergolas' rights.

91.     In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(b)(1) directly and proximately caused the Pergolas to incur actual damages including but

not limited to attorneys' fees and expenses in having to compile and submit a completely new loss mitigation application by and through the submission of BSI Submission #2, and eventually BSI Submission #3, in a futile attempt to have BSI acknowledge and review a loss mitigation application from the Pergolas. See *Plaintiffs' Exhibits 17 and 25*.

92. As a result of BSI's actions, BSI is liable to the Pergolas for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: AGAINST BSI
## VIOLATION OF 12 C.F.R. § 1024.35(e)

**(Failure to perform a reasonable investigation into the error alleged through NOE #2)**

93. The Pergolas restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

94. 12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

95. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such

documents, and contact information, including a telephone number, for further assistance."

96.     12 C.F.R. § 1024.35(e)(3)(i)(B) provides that, in regard to a notice of error submitted pursuant to 12 C.F.R. § 1024.35(b)(11), a servicer must comply with 12 C.F.R. § 1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error or prior to the date of a foreclosure sale, whichever is earlier.

97.     On or about June 2, 2016, the Pergolas, by and through counsel, submitted BSI Submission #1, a loss mitigation application, to BSI via facsimile transmission. See *Plaintiff's Exhibit 12*.

98.     Despite receiving BSI Submission #1 on or about June 2, 2016, BSI did not send any correspondence acknowledging receipt of or otherwise concerning BSI Submission #1 through July 6, 2016. See *Plaintiffs' Exhibit 12*.

99.     On July 6, 2016, the Pergolas, by and through counsel, sent NOE #2 to BSI via Certified U.S. Mail [Receipt No. 7016 0340 0000 9159 5282] to BSI's self-designated address pursuant to 12 C.F.R. § 1024.35(c) alleging that BSI committed an error for by failing to acknowledge BSI Submission #1. See *Plaintiffs' Exhibit 13*.

100.    Proof of the Pergolas' submission of BSI Submission #1 was included as an enclosure to NOE #2 and readily available to BSI in their review of such. See *Plaintiffs' Exhibit 13*.

101.    BSI received NOE #2 on or about July 12, 2016 at approximately 1:31 p.m. See *Plaintiffs' Exhibit 14*.

102.    On or about July 19, 2016, BSI sent correspondence acknowledging their receipt of NOE #2. See *Plaintiffs' Exhibit 15*.

18

103.     On or about August 23, 2016, BSI sent Response to NOE #2 to the Pergolas.  See *Plaintiffs' Exhibit 16*.

104.     Response to NOE #2 stated that "BSI has determined that no error has occurred…BSI does not have a record of receiving any loss mitigation application from this borrower, whether complete or incomplete.  Therefore, no written notice was sent to borrower." See *Plaintiffs' Exhibit 16*.

105.     It is clear that BSI did not perform a reasonable investigation into the error alleged by and through NOE #2. Proof of submission of BSI Submission #1 was enclosed with NOE #2, yet it appears that BSI did not even review this information that is critical to the alleged error. See *Plaintiffs' Exhibit 13*.

106.     Any reasonable investigation into the error alleged by and through NOE #2 would have included a review of the enclosures to NOE #2 and had BSI actually reviewed the enclosures to NOE #2, it would have been readily apparent that the Pergolas did indeed submit BSI Submission #1 on or about June 2, 2016 in direct contravention of BSI's self-serving statement contained within Response to NOE #2. See *Plaintiffs' Exhibits 13 and 16*.

107.     BSI actions, in failing to perform a reasonable investigation into the error alleged by and through NOE #2, constitute a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e).

108.     BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Pergolas' rights.

109.     In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.35(e) directly and proximately caused the Pergolas to incur actual damages including but not limited to attorneys' fees and expenses in having to compile and submit a completely new loss

mitigation application by and through the submission of BSI Submission #2, and eventually BSI Submission #3, in a futile attempt to have BSI acknowledge and review a loss mitigation application from the Pergolas. See *Plaintiffs' Exhibits 17 and 25*.

110. As a result of BSI's actions, BSI is liable to the Pergolas for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR: AGAINST BSI
## VIOLATION OF 12 C.F.R. § 1024.41(b)(2)(i)(B)

**(Failure to acknowledge BSI Submission #2)**

111. The Pergolas restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

112. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

113. 12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section."

114. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3)

provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

115. At no point in time during which BSI held the servicing rights for the Loan was there a foreclosure sale scheduled.

116. On or about October 7, 2016, the Pergolas, by and through counsel, submitted BSI Submission #2, a second loss mitigation application, to BSI via facsimile transmission. *See Plaintiffs' Exhibit 17*.

117. Within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of October 7, 2016, that is, on or before October 17, 2016, BSI was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Pergolas.

118. BSI failed to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Pergolas on or before October 17, 2016.

119. BSI expressly admitted that they received BSI Submission #2 on or about October 7, 2016 and failed to send any written acknowledgment of such until January 11, 2017, three (3) months after their receipt of BSI Submission #2. *See Plaintiffs' Exhibit 24.*

120. BSI's failure to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Pergolas on or before October 17, 2016 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(b)(2)(i)(B).

121. BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Pergolas' rights.

122. In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) directly and proximately caused the Pergolas to incur actual damages

including but not limited to attorneys' fees and expenses in researching, drafting, and sending NOE #3, in an attempt to have BSI properly acknowledge and review BSI Submission #2. See *Plaintiffs' Exhibit 18*.

123.    As a result of BSI's actions, BSI is liable to the Pergolas for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT FIVE: AGAINST BSI
### VIOLATION OF 12 C.F.R. § 1024.41(b)(1)

**(Failure to exercise diligence in obtaining documentation necessary to supplement BSI Submission #2 in order to obtain a complete loss mitigation application)**

124.    The Pergolas restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

125.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

126.    12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

127.    12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the

applicable date pursuant to paragraph (2)(ii) of this section."

128. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

129. At no point in time during which BSI held the servicing rights for the Loan was there a foreclosure sale scheduled.

130. On or about October 7, 2016, the Pergolas, by and through counsel, submitted BSI Submission #2, a second loss mitigation application, to BSI via facsimile transmission. *See Plaintiffs' Exhibit 17.*

131. Despite BSI's receipt of BSI Submission #2 on or about October 7, 2016, as was the case with BSI Submission #1, over one (1) month passed with no correspondence or communication otherwise from BSI acknowledging their receipt of or otherwise concerning BSI Submission #2. *See Plaintiffs' Exhibit 17.*

132. In fact, it was not until three (3) months after BSI's receipt of BSI Submission #2 and nearly two (2) months after BSI's receipt of NOE #3, that BSI took any steps in attempting to seek additional documents.

133. BSI expressly admitted that they did not attempt to obtain any documentation subsequent to their receipt of BSI Submission #2 on or about October 7, 2016, until January 11, 2017, three (3) months after their receipt of BSI Submission #2. *See Plaintiffs' Exhibit 24.*

134. BSI failed to exercise diligence obtain any documentation subsequent to their receipt of BSI Submission #2 on or about October 7, 2016.

135. BSI's failure to exercise reasonable diligence to obtain documents and information

23

to complete necessary to obtain a complete loss mitigation application subsequent to the Pergolas'
submission of BSI Submission #2 constitutes a clear, separate, and distinct violation of 12 C.F.R.
§ 1024.41(b)(1).

136.    BSI's actions are part of a pattern and practice of behavior in conscious disregard
for the Pergolas' rights.

137.    In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. §
1024.41(b)(1) directly and proximately caused the Pergolas to incur actual damages including but
not limited to attorneys' fees and expenses in researching, drafting, and sending NOE #3, in an
attempt to have BSI properly acknowledge and take the necessary steps to obtain a complete loss
mitigation application subsequent to the Pergolas' submission of BSI Submission #2. See
*Plaintiffs' Exhibit 18*. The Pergolas also remained in default during the entire duration of the time
that BSI serviced the loan preventing them from beginning their process of restoring their credit
standing.

138.    As a result of BSI's actions, BSI is liable to the Pergolas for actual damages,
statutory damages, costs, and attorneys' fees.

**COUNT SIX: AGAINST BSI**
**VIOLATION OF 12 C.F.R. § 12 C.F.R. § 1024.41(c)**

**(Failure to promptly request missing information or corrected documents to complete a
facially complete loss mitigation application after the supplementation of a loss mitigation
application through BSI Submission #3 or, alternatively, to fail to review a complete
application within thirty (30) days)**

139.    The Pergolas restate and incorporate herein each of their statements and allegations
contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

140.    12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the
provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

24

141.    12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

142.    12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

143.    12 C.F.R. § 1024.41(c)(1) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:(i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

144.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is

received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

145.    At no point in time during which BSI held the servicing rights for the Loan was there a foreclosure sale scheduled.

146.    Finally, after the submission of two (2) loss mitigation applications and two (2) notices of error, and the passage of roughly seven (7) months, on or about January 11, 2017, and January 26, 26017 BSI sent correspondence to the Pergolas acknowledging BSI's receipt of BSI Submission #2, stating that the Pergolas were required to submit missing, corrective, or supplemental information and documentation on or before February 15, 2017. See *Plaintiffs' Exhibit 22 and 23*.

147.    In accordance with BSI's request for the Pergolas to submit additional, corrective, or supplemental information and documentation for BSI Submission #2, on or about February 7, 2017, the Pergolas, by and through counsel, submitted BSI Submission #3 via e-mail and facsimile transmission well before the February 15, 2017 deadline. See *Plaintiffs' Exhibit 25*.

148.    As of February 7, 2017, BSI was either: (1) In possession of a complete loss mitigation application by and through their receipt of BSI Submission #2 and BSI Submission #3 and therefore were obligated to review such application in accordance with the requirements of 12 C.F.R. § 1024.41(c)(1) within thirty (30) days of February 7, 2017, that is, on or before March 9, 2017; or, (2) in possession of a facially complete application and required pursuant to 12 C.F.R. § 1024.41(c)(2)(iv) to promptly request the missing information or corrected documents that were subsequently discovered to be needed from the Pergolas.  See *Exhibits 17 and 25*.

149.    Rather than perform either of the aforementioned actions upon receipt of BSI Submission #3, BSI decided to let the clock run down until the servicing rights to the Loan

transferred back to Citi. See *Plaintiffs' Exhibit 26.*

150.    That is, despite the passage of approximately forty-one (41) days between the Pergolas' submission of BSI Submission #3 and the effective date of the transfer of servicing rights back to Citi, BSI took no further actions in regards to the loss mitigation application initiated by the submission of BSI Submission #2 and presumably completed by and through the submission of BSI Submission #3 prior to the effective date of the transfer of servicing rights back to Citi.

151.    BSI's failure to either review the complete loss mitigation application comprised of BSI Submission #2 and BSI Submission #3 or to promptly review the same and promptly request any missing information or corrective documents constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

152.    BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Pergolas' rights.

153.    As a result of BSI's actions, BSI is liable to the Pergolas for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT SEVEN: AGAINST BSI
## VIOLATION OF 12 C.F.R. § 1024.36

### (Failure to properly respond to RFI #1)

154.    The Pergolas restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 62 in their entirety, as if fully rewritten herein.

155.    12 C.F.R. § 1024.36(e)(1) provides that a servicer must respond to an information request by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or [c]onducting a reasonable search for the requested information and providing the borrower with a written

notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

156.    12 C.F.R. § 1024.36(f)(1) provides that the requirements of 12 C.F.R. §§ 1024.36(c) and 1024.36(d) do not apply if the request at issue is duplicative, seeks confidential, proprietary, privileged, or irrelevant information, or if it is overbroad or unduly burdensome.

157.    12 C.F.R. § 1024.36(f)(2) provides that if a servicer determines that any of the exceptions contained in 12 C.F.R. § 1024.36(f)(1) apply, then a servicer is required send written notice to the borrower stating the basis under 12 C.F.R. § 1024.36(f)(1) for such determination.

158.    12 C.F.R. § 1024.36(d)(2)(i)(B) provides that, in regard to a request for information submitted pursuant to 12 C.F.R. § 1024.36(a) a servicer must comply with 12 C.F.R. § 1024.36(d)(2)(i)(B) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the information request.

159.    On or about January 22, 2016, the Pergolas, by and through counsel, sent RFI #1 via Certified U.S. Mail [Receipt No. 7015 1730 0000 8888 9575] to BSI at BSI's self-designated address pursuant to 12 C.F.R. § 1024.36(b). See *Plaintiffs' Exhibit 3*.

160.    RFI #1 constituted a request for information pursuant to 12 C.F.R. § 1024.36(a). See *Plaintiffs' Exhibit 3*.

161.    BSI received RFI #1 on or about January 26, 2016 at approximately 3:21 p.m. See *Plaintiffs' Exhibit 4*.

162.    On or about January 27, 2016, BSI sent correspondence acknowledging their receipt of RFI #1.  See *Plaintiffs' Exhibit 5.*

163.    On or about March 8, 2016, BSI sent correspondence to the Pergolas in response to

28

RFI #1 ("Response to RFI #1").  A true and accurate copy of such correspondence is attached as *Plaintiffs' Exhibit 6*.

164.    BSI, by and through Response to RFI #1, barely provided any of the information and documentation requested by and through RFI #1 and stated that "[a]ny documents or requested information not provided in this letter is due to the request being too broad to determine specific information, or are considered proprietary information of BSI… and will not be provided." See *Plaintiffs' Exhibit 6*.

165.    Comment 1 of the CFPB's Official Interpretations to 12 C.F.R. § 1024.36(f)(1)(iv) provides illustrative examples as to what constitutes overbroad or unduly burdensome requests for information:

> The following are examples of requests for information that are overbroad or unduly burdensome:
> i.   Requests for information that seek documents relating to substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information and documents;
> ii.  Requests for information that are not reasonably understandable or are included with voluminous tangential discussion or assertions of errors;
> iii. Requests for information that purport to require servicers to provide information in specific formats, such as in a transcript, letter form in a columnar format, or spreadsheet, when such information is not ordinarily stored in such format; and
> iv.  Requests for information that are not reasonably likely to assist a borrower with the borrower's account, including, for example, a request for copies of the front and back of all physical payment instruments (such as checks, drafts, or wire transfer confirmations) that show payments made by the borrower to the servicer and payments made by a servicer to an owner or assignee of a mortgage loan.

166.    Comment 1 of the CFPB'S Official Interpretations of 12 C.F.R. § 1024.36(f)(1)(ii) provides illustrative examples as to what constitutes confidential, proprietary, or privileged information for the purposes of requests for information pursuant to 12 C.F.R. § 1024.36:

> Confidential, proprietary or privileged information may include information requests relating to, for example:
> i.  Information regarding management or profitability of a servicer, including information provided to investors in the servicer.
> ii.  Compensation, bonuses, or personnel actions relating to servicer personnel, including personnel responsible for servicing a borrower's mortgage loan account;
> iii.  Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations; or
> iv.  Information protected by the attorney-client privilege

167.    None of the requests for information as contained in RFI #1 constituted an overbroad or unduly burdensome information request or sought confidential, proprietary, or privileged information. Rather, BSI's objections seem to merely be boilerplate rather than being properly utilized in a determination as to whether any of the exceptions contained in 12 C.F.R. § 1024.36(f)(1) are applicable.

168.    In order to obtain the information requested by and through RFI #1, the Pergolas were caused to send NOE #1 to BSI via Certified U.S. Mail [Receipt No. 7009 1680 0002 1056 5457]. See *Plaintiffs' Exhibit 8*.

169.    Only upon receipt of Response to NOE #1, which BSI sent on or about May 24, 2016, did the Pergolas obtain all of the information requested by and through RFI #1 to which they had a right pursuant to 12 C.F.R. § 1024.36. See *Plaintiffs' Exhibit 7*.

170.    BSI actions, in failing to provide all of the information requested by and through RFI #1, or to alternatively provide an appropriate basis pursuant to 12 C.F.R. § 1024.36(f)(1), by

and through Response to RFI #1, constitute a violation of 12 C.F.R. § 1024.36.

171.    BSI's actions are part of a pattern and practice of behavior in conscious disregard for the Pergolas' rights.

172.    In addition to the damages outlined, *supra*, BSI's violation of 12 C.F.R. § 1024.36 directly and proximately caused the Pergolas to incur actual damages including but not limited to attorneys' fees and expenses in researching, drafting, and sending NOE #1, in an attempt to have BSI properly provide the information requested by and through RFI #1. See *Plaintiffs' Exhibit 7*.

173.    As a result of BSI's actions, BSI is liable to the Pergolas for actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Victor J. Pergola and Maureen E. Pergola pray that this Court enter its order granting judgment in their favor as follows:

A)    A finding that BSI committed violations of 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 as alleged in Counts One through Seven;

B)    For actual damages in an amount to be determined at trial as to each and every count;

C)    For costs, and reasonable attorneys' fees;

D)    For statutory damages against BSI in the amount of Two Thousand Dollars ($2,000.00) as to each violation of 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41, as alleged by and through Counts One through Seven;

E)    Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Whitney E. Kaster (0091540)
DANN LAW L.P.A.
P.O. Box 603104
Cleveland, OH 44103
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Victor J. Pergola and*
*Maureen E. Pergola*

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors

permitted by law.

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Whitney E. Kaster (0091540)
DANN LAW L.P.A.
*Counsel for Plaintiffs Victor J. Pergola and*
*Maureen E. Pergola*

32